WILLIS, BEN C. (Ret.), Associate Judge.
This is an appeal of a Final Order of Appellee, Division of Alcoholic Beverages and Tobacco (hereafter referred to as DABT), which revoked the alcoholic beverage license under its SRX classification, which was issued to Appellant, G.G.P., Inc., t/a Thee Doll House Beach. Such license is issued pursuant to Section 561.20(2)(a)3., Florida Statutes, 1983, to a restaurant of at least 2500 square feet of service area, equipped to serve 150 persons full course meals at tables at one time, and deriving at least 51% of its gross revenue from the sale of food and non-alcoholic beverages. This type of license is permitted as an exception to the general limitation on number of beverage licenses to one per 2500 residents or major fraction thereof within the territory of a county, as specified in Section 561.20(1), Florida Statutes.
The Final Order appealed was the culmination of proceedings pursuant to a notice to show cause to appellant which charged that it failed to derive at least 51% of its gross revenue from the sale of food and non-alcoholic beverages, contrary to Section 561.20(2)(a)3., Florida Statutes, 1983, and Rule 7 A-3.15(3)(b), Florida Administrative Code. The cited Code provision specifies the criteria to be used in determining whether or not the holder of a special restaurant license is a bona fide restaurant *798 and includes the requirement that it derive at least 51% of its gross revenue from the sale of food and non-alcoholic beverages. Specifically, it was charged that Appellant failed to derive at least 51% of its gross revenue from the sale of food and non-alcoholic beverages and was thus subjected to discipline of its alcoholic beverage license. Appellant disputed the charges and requested a hearing and the case was referred to the Division of Administrative Hearings which assigned a hearing officer to the case. At the hearing it was stipulated that Appellant held the license specified and that it derived less than 51% of its gross revenue from food and non-alcoholic beverages.
In his Recommended Order, the Hearing Officer included in his finding of facts that the SRX license was issued in December 1982 and that the restaurant, known as “Thee Doll House Beach” opened for business in January, 1983. It also found that it operated a buffet restaurant with a fixed price “all you can eat” menu. Meals included a hot entree chosen from baked ham, roast beef and turkey; a selection of four or five hot vegetables; large salad bar; two soups; and a dessert tray of pies, pastries and cakes. It also offered alcohol beverages for sale in the restaurant and at a bar. A “Las Vegas style” show was presented nightly at 8:00 o’clock although the restaurant opened at noon. It first charged $4.95 per person which attracted a large number of patrons many of whom were senior citizens. This proved to be unprofitable so the price was increased to $5.95, but this resulted in a drastic drop in business. “Early-bird” specials were introduced and extensive radio and television advertising was utilized to promote the buffet. However, the ratio of food sales to the gross never reached 51%. In January 1983 it was 40.5% and in the late months of the year declined to less than 30%. The overall food sales for the year were 31%. The problems of the operation included an adverse market condition with limited discretionary income available to restaurant-going consumers. Other restaurants in the area were experiencing difficulties.
Appellant held itself out as a restaurant, not a lounge, and its entire operation and advertising emphasized food sales rather than liquor sales. The price of the meal was significantly below its market value. Any success in lowering prices also served to decrease the percentage of gross food sales. A reasonable price for the menu offered, based on comparison of other area restaurants, would have been $8 to $10. These price figures on the food sold would have yielded a percentage of food sales to gross revenues of about 60%.
Such were the findings of fact of the Hearing Officer. In his conclusions of law he recited the power of DABT to suspend or revoke a beverage license (Section 561.29(1)(a), (b), and (e)) and to impose a civil penalty (Section 561.29(3)) for a violation of Chapter 561 or implementing rules. The status of a special restaurant beverage license, such as the one in the instant case, is an exception to the quota limitations which otherwise apply to issuing beverage licenses; and the requirement that in order to qualify and maintain such license, a restaurant must derive at least 51% of its gross revenues from the sale of food and non-alcoholic beverages. There was also reference to Department of Business Regulation v. Huddle, 342 So.2d 140 (Fla. 1st DCA 1977) in which it was held that a special restaurant license was never intended to be a “subterfuge for the operation of a bar or cocktail lounge with only incidental sales of food,” and that the 51% requirement is established to ensure that only a “bona fide substantial operation primarily engaged in the service of food and non-alcoholic beverages” holds such a license.
The Final Order of the Director of DABT adopted the Findings of Fact of the Hearing Officer and also the Conclusions of Law which are above mentioned.
The Hearing Officer made some additional conclusions of law, some of which DABT in its Final Order declined to adopt. After stating that Appellant had failed to comply with the statutory requirements which apply to special restaurant licenses and that it *799 was no longer qualified to hold such license, the Hearing Officer stated additionally that the record evidence did not support a conclusion that the restaurant here was “intended to be a subterfuge for the operation of a bar or cocktail lounge with only incidental food sales,” and that Appellant had requested an opportunity to surrender its license for cancellation rather than to suffer a revocation. The Hearing Officer concluded that revocation, in the light of offer to surrender the license for cancellation, is not justified by the facts in the case “which indicate a simple failure of a new business to achieve its objectives, not culpable conduct by a licensee.” It was accordingly recommended that the license be revoked “but that such action be vacated if respondent surrenders its license for cancellation within 10 days of entry of DABT’s final order.”
DABT declined to adopt the Conclusions of Law set forth in the preceding paragraph and specifically rejected them in its final order. It proceeded to revoke Appellant’s license and increased the recommended penalty to revocation. DABT gave the following reasons for increasing the penalty:
A. The percentage of food and non-alcoholic beverage sales at Respondent’s premises during the calendar year 1983 never approached 51% and that the reports submitted “reveals a steady decline from 40.5% in January to 23.3% in December. ...”
B. Florida Statute 561.20 requires that 51% of gross revenue sales be from food and non-alcoholic beverage sales.
Appellant contends the Final Order is defective in two particulars: (1) the final order erroneously rejects a finding of fact made by the Hearing Officer; and, (2) The final order revokes the license without adequately explaining the reasons for increasing the penalty recommended by the hearing officer.
The “finding of fact” of the Hearing. Officer which is asserted to have been rejected is that Appellant’s conduct was not culpable, but merely failed to reach the objectives in a new business. This statement is not a finding of fact but an interpretation of the evidence, and thus, was more properly denominated a conclusion of law. Contrary to the implication of the Hearing Officer’s Recommended Order, culpability was never at issue in this case; a finding of culpability is not required for revocation of a special license.
We recognize that revocation is a severe penalty. However, revocation does not forever bar appellant from seeking another special license. Appellant can apply for a new license. DABT would have discretion in licensing appellant. In making its decision to grant another license, evidence of appellant’s lack of culpability could and should be presented for consideration by DABT,[1] and in this case should not be regarded as “culpable” in the sense of wrongdoing equivalent to a lack of basic integrity. We find no error in DABT’s rejection of the Hearing Officer’s conclusion concerning lack of culpability.
Further, we find that DABT did give adequate explanation for increasing appellant’s penalty. DABT recited those facts which support a finding that appellant failed to meet the criteria of Section 561.20(2)(a)3., which failure entitled DABT to revoke appellant’s license pursuant to 561.29 (1).
Accordingly, the order on appeal is AFFIRMED.
BOOTH, C.J., concurs.
ZEHMER, J., concurs specially.

. Revocation does not disqualify appellant from obtaining another special beverage license in the future. See § 561.15(3). A business which meets the criteria of 561.20(2)(a)3., is automatically entitled to an SRX license unless the owner(s) come under the limiting provisions of § 561.15. Where § 561.15 applies to an owner, such as when an owner has had a license revoked previously, DABT may review the application and may exercise its discretion in granting or denying the application.